**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 20-cr-20153-MOORE/Becerra

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MINNELA ODRIN MOORE,

    Defendant.

    _____/

**REPORT AND RECOMMENDATION[1] ON DEFENDANT'S MOTION TO SUPPRESS**

    **THIS CAUSE** came before the Court on Defendant, Minnela Odrin Moore's ("Defendant"), Motion to Suppress Physical Evidence and Statements ("Motion"). ECF No. [15]. The United States of America (the "Government") filed a Response to Defendant's Motion, ECF No. [21], and the Court held an evidentiary hearing on this matter, ECF No. [30]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendant's Motion be **DENIED**.

**I.    BACKGROUND**

    Defendant is charged in a one-count Indictment with knowingly possessing a firearm after having been previously convicted of a felony in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). As described in more detail below, City of Miami Police Department Officers, in response to a domestic violence 911 call, arrived on the scene to find a female who

---

[1] This matter was referred to the undersigned by the Honorable K. Michael Moore, Chief United States District Judge, "to take all necessary and proper action as required by law and/or to submit a Report and Recommendation to this Court regarding all pretrial motions, except motions for continuance of trial." ECF No. [8].

identified Defendant as the man that had assaulted her. After speaking to the woman and Defendant for approximately forty minutes, Officer Simington searched Defendant's backpack and found a stolen firearm.

Defendant contends that, based on the totality of the circumstances, the firearm located inside his backpack and all subsequent statements made should be suppressed. ECF No. [15] at 6. Specifically, Defendant argues that the seizure of the firearm runs afoul of the Fourth Amendment because he was detained for a prolonged period before the backpack was searched, he did not give clear consent to search the backpack, he was not advised that he could refuse consent, the backpack did not pose any danger to the officers, and the backpack was not within his reach. *Id.* at 4–5.

In response, the Government argues that Defendant's Motion should be denied because the firearm was properly seized. ECF No. [21] at 1. Specifically, the Government argues that Defendant's detention was reasonable because the officers used the "least intrusive means of detention for only as long as necessary" to resolve the domestic violence incident. *Id.* at 7. Moreover, the Government argues that, based on the totality of the circumstances, Defendant willfully consented to a search of his backpack. *Id.* at 9–11.

## II.   FINDINGS OF FACT

At the evidentiary hearing, the Government called one witness, Officer Simington, who was subject to direct and cross-examination. The Government also introduced Officer Simongton and Officer Nentwig's Body Worn Camera footage, which depicted the events that give rise to the instant Motion. Based on the testimony of Officer Simington, who the Court finds was credible and the video footage from the Body Worn Camera, the Court finds as follows.

On January 30, 2020, Officers Simington and Nentwig responded to a 911 call in which Defendant's roommate, a female identified as A.H., accused Defendant of assaulting her. When

the officers arrived at the scene, Defendant and A.H. were standing in an open area outside their residence.  A.H. approached the officers and accused Defendant of assaulting her.  A.H. stated that although she had video footage of the assault on her cellphone, Defendant had taken the phone and deleted the video depicting the assault before the officers arrived.  A.H. further indicated that Defendant was in possession of a firearm.  At that time, Officer Simington conducted a pat down search of Defendant, but did not locate any firearms.  Officer Simington noted that Defendant had a backpack within his reach; however, neither officer searched the backpack.

     A.H. insisted that she had a video depicting the assault.  However, the video she showed the police only showed Defendant approaching her.  A.H. insisted that she sent another video showing the assault to friends before it was deleted by Defendant.  She re-assured the officers that she was in the process of retrieving the video from those friends.  Based on A.H.'s representation that she could procure evidence of the alleged assault, the officers waited at the scene approximately forty minutes.  After speaking to A.H. and reviewing what she provided, the officers determined that A.H. did not have any evidence of the alleged assault, including physical injuries or video footage.

     Defendant was detained for the entire forty-minute period during which the officers waited for A.H. to retrieve the alleged video of the assault.  Although Defendant was uncuffed, he was not free to leave the vicinity due to on the ongoing investigation. The officers' Body Worn Camera footage reveals that while A.H. tried to retrieve the alleged video, the officers attempted to de-escalate the ongoing argument between A.H. and Defendant.  The footage also reveals that the officers were attentive to an unrelated disturbance on the same street.  About forty minutes after the officers arrived and in response to A.H.'s continued accusations that Defendant was in possession of a firearm, the following exchange occurred:

| | |
|---|---|
| Officer Simington: | Hey boss, you don't got anything in that bag right? |
| Defendant: | No. |
| Officer Simington: | No? Okay. You mind if I go and check your bag real quick? . . . Minella . . . you [] got nothing in your bag, right? |
| Defendant: | Nah. Go ahead. |
| Officer Simington: | Okay. |

In addition to the verbal response, Defendant gestured toward the backpack. The footage further reveals that Officer Simington did not proceed toward the backpack until Defendant's consent was secured.

During his search of the backpack, Officer Simington located the subject firearm. Defendant did not deny that the backpack was his property; rather, Defendant stated that he had taken possession of the firearm from another individual the previous day. Officer Simington testified that at the time of the search, he did not have any knowledge of Defendant's prior criminal history.

### III. ANALYSIS

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause.'" *United States v. Batson*, 749 Fed. Appx. 804, 806 (11th Cir. 2018) (alteration supplied) (quoting U.S. Const. amend. IV). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990)). Consensual searches are generally acceptable because it is "reasonable for the police to conduct a search once they have been permitted to do so." *Id.* at 250–51 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "The standard for measuring

the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251 (quoting *Rodriguez*, 497 U.S. at 183–89).

Indeed, "where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983) (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329 (1979)). "The voluntariness of the consent must be judged in the light of the totality of the circumstances." *United States v. Tovar-Rico*, 61 F.3d 1529, 1535 (11th Cir. 1995) (citing *Schneckloth*, 412 U.S. at 227). In determining whether consent was voluntary, the Court should consider "the factual circumstances surrounding the confession, assess[] the psychological impact on the accused, and evaluate[] the legal significance of how the accused reacted." *Schneckloth*, 412 U.S. at 226 (citing *Culombe v. Connecticut*, 367 U.S. 568, 603 (1961)); *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (noting that in evaluating whether consent was voluntary, a court should consider "the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found").

Specifically, the prolonged nature of a detention does not, in and of itself, render consent involuntary. *See, e.g.*, *Shriner v. Wainwright*, 715 F.2d 1452, 1455 (11th Cir. 1983) (concluding that a confession made following a ten-hour detention was "not coerced or involuntary"); *United States v. Arango-Correa*, 851 F.2d 54, 56–57 (2d Cir. 1988) (holding that a five hour detention did not render a defendant's consent to search involuntary notwithstanding the fact that he was strip searched, complained of stomach pain, and was sleepy); *United States v. Edenilson-Reyes*, No.

5

1:09-CR-00361-RWS, 2010 WL 5620439, at *13 (N.D. Ga. Oct. 26, 2010), *report and recommendation adopted*, 2011 WL 195679 (N.D. Ga. Jan. 20, 2011) (concluding that "the 30 minutes prior to [] obtaining [] consent [were] not extraordinary" so as to affect "the voluntariness of the consent") (citing *United States v. Brown*, 223 Fed. Appx. 875, 880 (11th Cir. 2007)).

Instead, in determining whether a detention was unreasonably prolonged so as to warrant suppression of evidence, the Court must assess the totality of the circumstances. *See United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (concluding that a 75-minute detention was "only as long as it was necessary to complete [the] investigation"). In this case, based on the totality of the circumstances, the undersigned concludes that Defendant's consent to the search of his backpack was voluntary.

First, the Court is unpersuaded by Defendant's argument that the detention was unreasonably prolonged. It is undisputed that Defendant was detained for approximately forty minutes while Officers Simington and Nentwig investigated the alleged assault. Although Defendant was not free to leave, he remained uncuffed during the investigative period. The record reflects that during the entire time leading up to the search of the backpack, the officers diligently engaged in an ongoing investigation, which included attempts to de-escalate the argument between A.H and Defendant and attempts to retrieve video evidence of the alleged assault. Indeed, it appears that the majority of the time was spent waiting for A.H. to find the video evidence she insisted she could find and appeared to be looking for while they waited. Additionally, the officers were also attentive of an unrelated disturbance down the street from this investigation, which they the feared could impair their investigative efforts. This delayed their ability to conclude the investigation of the alleged assault. As a result, the Court finds that the officers' investigation was only as long as was reasonably necessary.

Second, Defendant's argument that he did not give clear consent to search the backpack is unconvincing. The record reflects that the officers did not locate any firearms during Defendant's initial pat down search. However, as part of the ongoing investigation, Officer Simington sought confirmation that Defendant's backpack did not contain any firearms given that A.H. insisted that Defendant was in possession of a firearm.[2] The undersigned notes that, in obtaining consent to search the backpack, Officer Simington did not draw his weapon, make any threats, use any force, or make any physical contact with Defendant. Instead, Officer Simington remained at a fair distance from Defendant and communicated in a conversational and non-threatening manner. Officer Simington did not proceed toward the backpack until Defendant's consent was secured. Indeed, there is no claim or indication that Officer Simington used force or was otherwise verbally abusive to Defendant in procuring consent. The Body Worn Camera footage also reveals that Defendant gave verbal consent to search and gestured toward the bag, further reinforcing his consent to search. Indeed, in the time leading up to the consent, the Officers directed most of their attention to A.H. and their interactions with Defendant were brief and their language was non-confrontational and respectful. Based upon these facts, the Court finds that Defendant gave Officer Simington clear consent to search the backpack.

Third, the officers' failure to inform Defendant that he could refuse consent does not render the consent involuntary. The law in this Circuit is clear: "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." *United States v. Rodriguez Perez*, 798 Fed. Appx. 536, 540 (11th Cir. 2020) (quoting *Schneckloth*, 412 U.S. at 227). "Thus, the government is not

---

[2] The Court rejects Defendant's argument that the backpack was not within his reach. Indeed, as is clear from the officers' Body Worn Camera footage and as was established during the hearing, the backpack was within Defendant's reach when the officers arrived at the scene.

required to prove that the suspect was aware of the right to refuse to consent." *Id.* (citing *United States v. Chemaly*, 741 F.2d 1346, 1353 (11th Cir. 1984), *opinion reinstated on reh'g sub nom. United States v. Bacca-Beltran*, 764 F.2d 747 (11th Cir. 1985)). Here, Officer Simington asked Defendant whether he had any firearms in his backpack, which Defendant denied. Officer Simington then asked Defendant whether he could search the backpack. As stated, Defendant's verbal and non-verbal communication indicate that Defendant consented to the search of the backpack. Officer Simington's failure to inform Defendant that he could deny consent is not dispositive and does not render Defendant's consent involuntary given the totality of the circumstances.[3]

## IV. CONCLUSION

For the reasons stated at the hearing and as set forth above, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress, ECF No. [15] be **DENIED**.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.

Any request for an extension of this deadline must be made within seven (7) calendar days from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-

---

[3] The Court likewise rejects Defendant's argument that the backpack did not pose any danger to the officers. Indeed, the basis for the search was not officer safety because the bag was searched upon Defendant's consent, which was requested after A.H. repeatedly insisted that Defendant was in possession of a firearm.

to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on June 4, 2021.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE